# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| TRIMAX MEDICAL MANAGEMENT, INC., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 5:16-CV-399 (MTT) |
| HIBERNATION THERAPEUTICS USA, LLC, | ) |
| Defendant. | ) |

## ORDER

At the March 28, 2018 hearing, the Court granted Trimax Medical Management, Inc. ("Trimax")'s motion for summary judgment (Doc. 60) only as to Hibernation Therapeutics USA, LLC ("Hibernation")'s counterclaim for "lost investments."[1] Doc. 68 at 1-2. This Order explains why.

## I. DISCUSSION

This matter arises from a breach of contract claim brought by Trimax against Hibernation to recover unpaid amounts that Trimax contends it is owed for services performed pursuant to a Service Agreement. *See generally* Doc. 1. Hibernation, a company formed to market the drug Adenocaine, filed a counterclaim for breach of contract and specific performance, asserting that Trimax breached the Service Agreement by failing to provide Hibernation with "all records, notes, data, memoranda,

---

[1] The Court denied the parties' respective motions for summary judgment on all other claims. Doc. 68 at 1-2.

models, and equipment of any nature in Trimax's possession or under its control related to the Service Agreement," and that as a result, Hibernation suffered damages because without the books and records, no lender would finance Hibernation to market Adenocaine.  Doc. 28 at 15-16.  In its motion for summary judgment on Count I of Hibernation's counterclaim, Trimax argues that Hibernation "cannot present its lost-profits theory of damages[2] because the record shows [Hibernation] was not profitable."  Doc. 60 at 6.  Trimax also argues in the alternative that it is entitled to summary judgment on the issue of lost profits because Hibernation's alleged loss cannot be traced solely to the alleged breach.[3]  *Id.* at 8.

Generally, under Georgia law,[4] "[d]amages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach."  O.C.G.A. § 13-6-2.  However, remote and consequential damages, such as lost profits, must be "traced solely to the breach" or "capable of exact computation."  O.C.G.A. § 13-6-8.

---

[2] Hibernation has actually asserted a counterclaim for lost investments and argues that lost investments are a form of lost profits.  Doc. 48-1 at 13.  Trimax initially argued that lost investments are not a form of lost profits and that nothing in Georgia law allowed the recovery of lost investments.  Doc. 63 at 1-2.  While it is true that Hibernation's claim for lost investments, as Hibernation uses the term, is likely more speculative than the weakest imaginable traditional claim for lost profits, the Court is satisfied that Georgia law governing the recovery of lost profits applies.

[3] The Court need not reach this alternative argument because, as discussed below, Hibernation cannot establish lost profits with a reasonable degree of certainty.  The Court notes, however, that there is scant, if any, evidence that Hibernation's failure can be traced solely to the missing books and records.

[4] The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.  Because the determination of damages constitutes a substantive issue, Georgia law governs awards for lost profits. *McDermott v. Middle East Carpet Co., Associated*, 811 F.2d 1422, 1426 (11th Cir. 1987) (citations omitted).

Given this level of proof, lost profits are generally held to be too speculative, remote, and uncertain for recovery. *McDermott v. Middle East Carpet Co., Associated*, 811 F.2d 1422, 1426 (11th Cir. 1987); *EZ Green Associates, LLC v. Georgia-Pacific Corp.*, 331 Ga. App. 183, 187, 770 S.E.2d 273, 277 (2015) (citations omitted). Nevertheless, a claimant may recover lost profits if it can show that (1) the business has been established; (2) the business has a history of earning profits; (3) "definite, certain, and reasonable data" exist to ascertain the amount of lost profits; and (4) "such profits were in the contemplation of the parties at the time of the contract." *Empire Shoe Co. v. NICO Industries, Inc.*, 197 Ga. App. 411, 413-14, 398 S.E.2d 440, 442-43 (1990) (quotation marks, citations, and alterations omitted). The general standard, therefore, is that a claimant may recover lost profits so long as it shows a "proven track record of profitability" and establishes lost profits with a "reasonable degree of certainty." *EZ Green*, 331 Ga. App. at 188, 770 S.E.2d at 277 (quotation marks and citations omitted).

Here, as a matter of law, the evidence before the Court shows Hibernation is not entitled to lost profits. Hibernation clearly was not an established business and had no track record of any profitability. Hibernation's counsel acknowledged as much at the March 28, 2018 hearing:

> And we also do not have a track record of any profits. I mean, I think it's clear that the company did not make any profits in its short life. . . this is clearly something that is off the beaten path in terms of Georgia lost profits analysis because we do not have a history of lost profits. We don't even have one year of lost profits."

Doc. 71 at 18:12-15, 21-24. Actually, it is worse than that; Hibernation never made a penny, much less any profit.

Nevertheless, Hibernation argues it can still recover lost profits because according to "private placement valuations, a properly funded [Hibernation] could have marketed the product in the United States and realized approximately $150,000,000.00 in sales," and Hibernation's "gross profits would have been 95% of this gross amount, or $142,500,000.00 with potentially billions of dollars in revenue for the use of the product in additional medical applications." Docs. 48-1 at 13; 61 at 13. These private placement valuations are not directly cited in Hibernation's briefs. Instead, Hibernation cites the affidavit of Stephan Fitch, a former Hibernation Board member and owner of Hibernation's parent company, which references, but does not attach, the private placement valuations. *See id.* (citing Fitch's affidavit at Doc. 48-12 ¶ 11). The unattached "private placement valuations" are patently hearsay. It is not even clear what constitutes the private placement valuations. It appears Hibernation refers to an "Information Memorandum," which the Court found in the record but, again, was never directly cited in Hibernation's briefs. Doc. 59 at 264-306. Regardless, even if evidence of the private placement valuations had been attached to Fitch's affidavit, properly authenticated, and cured of any hearsays, Hibernation still could not recover lost profits for several reasons.

First, the Information Memorandum is nothing more than a teaser document that was used to attract potential investors.[5] In fact, this was confirmed by Hibernation's own witness in his deposition testimony:

---

[5] The document states, among other things, the following disclaimer: "This Information Memorandum is an information memorandum only and *is not a prospectus* within the meaning of the Investment Funds, Companies and Miscellaneous Provisions Act [of] 2005 or the Prospectus (Directive 2003/71/EC) Regulations [of] 2005." Doc. 59 at 264 (emphasis added).

> This document is what would be classified as a teaser document. It is not a subscription document. It is not somebody signing up. It's basically saying this is the nature of where we are as a picture and what we think the valuation might be, and, therefore, you will have [to], with your adviser, review all of our actual performance information to make a determination whether you're going to write a check.

Doc. 53 at 120:13-21 (deposition testimony of Charles Reddien). Thus, to the extent Hibernation argues the Information Memorandum should be viewed as a prospectus to prove lost profits, that argument fails.[6] Moreover, while the document states that Hibernation had gross profit goals, Hibernation has made no effort to calculate net profits, a determinative factor for recovering lost profits. *See Authentic Architectural Millworks, Inc. v. SCM Grp. USA, Inc.*, 262 Ga. App. 826, 831, 586 S.E.2d 726, 731 (2003) (holding that lost profits could not be recovered because no evidence was submitted from which net profits could be calculated). At the March 28 hearing, Hibernation's counsel conceded that Hibernation had made no effort to calculate its net profits. Doc. 71 at 20:17-20. Finally, Hibernation acknowledges that no expert was retained to calculate the value, anticipated revenues, and alleged lost profits of the company. *Id.* at 18:4-13; *see also* Doc. 53 at 89:4-8. But the Information Memorandum is someone's opinion, however weak, that once Hibernation marketed Adenocaine, $142,500,000.00 in gross profits would somehow materialize. If Hibernation wanted to rely on such opinion evidence, it needed a properly qualified expert.

At the March 28 hearing, Hibernation argued that Trimax had admitted that Hibernation had lost gross profits of $142,500,000.00. Hibernation found this admission in the testimony of David Field, a Trimax representative, who, when shown a copy of the

---

[6] It appears Hibernation's counsel mistakenly called the document a prospectus at the March 28 hearing. Doc. 71 at 34:24-35:3.

Information Memorandum, acknowledged that the information contained in the Information Memorandum was "true and accurate" and had been "approved by all the [B]oard members." Doc. 71 at 17:8-18:3. From this, Hibernation argued that the "prospectus [sic], which talks about the valuation of the company, the anticipated revenues of the company, and all of these other things, were attested to by Mr. Field" and others. *Id.* at 18:4-7. The fact that Hibernation's Board, including Field who was a Board member at the time, agreed that their capital-soliciting Information Memorandum contained accurate data can hardly be seen as an admission in this matter that Hibernation lost $142,500,000.00 in gross (again, not net) profits.

## II. CONCLUSION

In sum, there is absolutely no evidence of Hibernation's alleged net lost profits. Accordingly, Trimax's motion for summary judgment (Doc. 60) only as it relates to Hibernation's counterclaim for lost investments is **GRANTED**.

**SO ORDERED**, this 30th day of April, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL
UNITED STATES DISTRICT COURT